*547 Opinion of the court by
Chief Justice Bibb.
Overstreet had judgment against Wilson and Prior, and thereupon, issued an execution bearing teste on the 9th of February, 1822 returnable to the 6th of April; with an endorsement that either notes on the bank of Kentucky or its branches, or of the bank of the Commonwealth of Kentucky or its branches, might be received by the officer in discharge of the execution. The deputy sheriff did accordingly receive the amount in such bank notes, which at the time he received them were at a discount of one half in exchange for gold or silver. The deputy returned the execution, “ready to satisfy;” but the money not being paid to the plaintiff, in the execution, he made a motion against the principal sheriff and his sureties; and the court gave judgment for the amount of the execution, neither entering the judgment to be discharged in bank notes, nor yet reducing the amount to the value in coin; together with interest after the rate of fifteen per centum per annum, from the return day, until paid, and costs.
The defendants in the motion insist, that no judgment should have been rendered against them upon motion:
2nd That the judgment should, (if given,) have been reduced to the value of coin, or lawful money of the United States, and not for the nominal amount of the bank notes.
It is argued that the remedy by motion is not sanctioned by the statutes, which bear upon this summary remedy.
It may be stated as an axiom in the municipal law of our country, that a memorandum at the foot, or on the hack of a deed, bond, judgment or execution, if made by competent authority, may enlarge, *548 restrain, alter and qualify the signification and effect of the body of the writing. A memorandum at the foot of a judgment, that it is to be discharged by a similar sum, or to have a credit, for a sum an indorsement of a deed or bond, varying or qualifying the terms in favour of the one party of the other, (if properly evidenced; an endorsement of an execution, that no security of any kind is to be taken, or of credits; or that, bank notes will be received, are all of legal efficacy. To rite authorities or use argument to prove t these, would be time misspent. It may be affirmed that the endorsement made on this exercution for bank notes, is a part, of it, and regulated in law the officer’s duty, in executing the command of the writ. The endorsement was made in pursuance of a legal provision, and when made, a legal effort was the, consequence, as well on the officer, as on the defendant, and the plaintiff.
An execution endorsed for Bank notes, shall not be collected in specie.
Act giving the motion against the sheriff to pay over the money collected on execution.
The writ of execution in this case was a fieri, facias, in the body, for dollars and cents, by the endorsement, for bank notes. Bank notes were receivable and payable: if the officer bud coersed other money, be would have, been, guilty of oppression in office, contrary to the authority and requisition of the precept.
The words of the statute, which provide, a remedy against the sheriff’, for failing to pay over the amount which he has collected upon this execution, are these: “If any sheriff, or other officer, shall make return upon any writ, of fieri facias, cenditioni exponas, or other writ of execution, that he hath levied the debt, damages, and costs, as in such writ is required, or any part thereof, and shall not immedietely pay the same to the party to whom the same is payable, or his attorney,” — “it shall and may be lawful for the creditor at whose suit such writ of fieri facias, conditioni exponas, capias ad satisfacien, dum, or other writ of execution or attachment, shall issue, upon a motion made to the next succeeding court, from whence such writ shall issue, to demand judgment against such sheriff or other officer, for the money or tobacco mentioned in the writ, of *549 so much thereof as shall be returned levied in such writ of fieri facias, venditioni exponas or other writ of execution, with interest thereon, at the rate of fifteen percent per annum, from the return day of the execution, until the judgment shall be discharged;” and such court is hereby authorized and required to give judgment accordingly, and to award execution thereupon, provided such sheriff or officer have ten days previous notice of such motion,” 1 Dig. 495, sect. 35
Objected, that where Bank notes were collected by plaintiff's order, the motion was not maintainable.
Bank notes pass under the name of money in a will.
Stolen bank notes payable to bearer cannot be pursued into the handset an innocent receiver, in a fair course of business, without notice.
*549 By a subsequent act. 2 Dig. 1143, the motion may be brought at any time within two years, and against the sureties of the sheriff.
If the objection to this remedy by motion be analyzed, it is resolved into this: that the bank notes which the sheriff was authorized to collect, and did collect, as in the writ required, were specific commodities, goods, securities, or documents for debts; and not to be treated as, or compared to, cash or money. That bank notes are not money in the strictest and most limited sense of the word, when used in legal proceedings, is admitted. They are not money for the purpose of legal tender; an order drawn for bank notes, can not be considered a bill of exchange, which by the law merchant must be drawn for money. But because they are not considered as money, for every legal, purpose and effect, it does not follow that they are to be considered as money for no purpose, in no sense, and for no legal effect.
Upon Ld. Ailesbury’s will, £900 in bank notes were considered as described and passing under the bequest of all the testator’s money; Popham and al vs Bathurst in chancery, 1748.
In Miller vs. Race, 1 Burr, 457, the question was, whether a bank note payable to bearer, which had been stolen, could be recovered by one who had received it in a fair course of trade, having no notice or knowledge of the robbery, from the defendant, the clerk of the bank who had received if from the plaintiff, but refused to pay if or re-deliver it, upon the plea, writ had been stolen, and the owner *550 who had been robbed, had indemnified the, bank to stop it. The great question was, whether the plaintiff had acquired a property in the note. It was argued that the plaintiff could have acquired no right by the assignment of a robber; but the whole, court gave judgment for the plaintiff, upon the ground that bank notes are constantly and universally treated as money, paid and received as cash; that it was necessary for the purposes of commerce, that their currency should he established and secured. Lord Mansfield said it had been very ingeniously argued for the defendant “But the whole fallacy of the argument, turns upon comparing bank notes to what they do not resemble, and what they ought not to be compared to, viz: to goods, or to securities, or documents for debts. Now they are not goods, not securities, nor documents for debts, nor so esteemed, but are treated as money, as cash in the ordinary course and transaction of business, which gives them the currency of money.”
Bank notes a good tender, when not objected to.
Money, currency, and current money, signify different things at different times and places, according to the medium in circulation and laws on the subject.
In the case of the bank of the U. S. vs. Bank of Georgia, 10 Whea 847, the supreme court said, “bank notes constitute a part of the common currency of the country, and ordinarily pass as money. When they are received as payment, the receipt is always given for them as money. They are a good, tender as money, unless specially objected to.”
We can not but know that money in its most general signification, meant a representive of value, a medium of commerce and exchange. In this general term, is included lawful tender money, and current, money, and that the one or the oilier of these species of money, are intended by certain forms and modes of expression, according to the times and currencies in use, and the same words used at different periods may convey different ideas, as to the kind of money intended. During the revolutionary war, when paper money was the only circulating medium of the states, current money meant paper money: after that was abolished and called in, and gold and silver became the currency, then current money meant coined money, and not paper. So in Chambers vs George, 5 Lit. Rep. 385, it was held that a note payable “in the *551 currency of this state,” did not mean gold and silver, because at the date of the note, a paper circulating medium was the money in use, and had the currency of the state.” But in Lampton vs Haggard, 3 Mon. 149, a note payable in “Kentucky currency” was held to mean gold and silver. These expressions so exactly alike, used at different periods, were construed to mean, paper dollars in the former case and coined dollars in the latter, because of the difference of money used as the general circulating medium at the one time and at the other.
Notes on the Bank of the Commonwealth made receivable and payable at the treasury of the state as money.
Com’lth’s Bank notes treated as money by the legislature.
Bank notes which plaintiffs have been authorizes by the sheriffs since 1814, to endorse, might be received on executions are money within the act of 1786 giving the motion against the sheriff for money collected on execution.
*551 But the bank notes alluded to in the endorsement upon this execution, had been by law made “receivable at the treasury of this state, and by all tax-gatherers and other public officers, in all payments for taxes or other monies now due or to become due to the state, and by all collectors of the county levy;” 1 Dig. 155, sec. 17. By the act establishing the bank of the Commonwealth, it will be seen throughout, that the notes of the bank are called and treated as money, see sec. 5, 17, 22, Dig. 156 to 161, and 167, sec. 11. The salaries of all public officers, and all demands upon the treasury were made payable in these bank notes. By the fifteenth section of the act establishing the Bank of Kentucky, 1 Dig. 145, the bills or notes of that bank were likewise receivable in all payments to the state.
It does not seem to be going too far to say, that the legislature have treated these bank notes, mentioned in the endorsement on the execution, as a circulating medium of commerce and exchange, as money for certain purposes. By authorising executions issuing on their face for lawful money, to he endorsed by the plaintiff, as payable in these bank notes, and upon such endorsements requiring the sheriff to conform to them in the collection, the legislature have certainly treated these hank notes, as a species of current money; and as between plaintiff, defendant and sheriff, they must be so considered and treated.
It is no objection to the remedy by motion, that the statute which provides this remedy, was enacted in 1796; and this is a new species of money created *552 since. A general and permanent, statute like this speaks every year, every day and every hour of its continuance in force. So that the word “money" used in the statute does apply, and its provisions do adapt themselves to any new species of money, which the laws of Kentucky, may since have recognized and authorized, with tho assent of the plaintiff, to be received in payment upon executions; as much so, as to the new pieces which have been since the statute coined at the mint of the United States, or to foreign coins made current by the laws of the United States.

Argumentum ab inconvenienti cal fortissimum in duge.

Sherriff who has collected money on an execution, may be proceeded against by rule and attachment at common law, and thus compeled to bring it into court for the plaintiff.
It is to be remembered that the system of endorsement of executions, as receivable and payable in bank notes, commenced in 1814, and has been continued. A very great portion of the executions have in this series of years, been so endorsed, and have been so collected; the courts have sustained the remedies by motions against the sheriffs, for failing to pay over this species of money collected on executions. This is the first time that the question as to the propriety of this remedy in such cases has been presented to the appellate court. This mode of execution, and of remedy against the sheriff, for failing to pay over the money, is of very extensive influence upon the business of the country. To deny the remedy by motion, in such cases, would produced a shock of the most inconvenient kind. And it is a maxim, “argumentum ab inconvenienti est fortissumum in tege:” (an argument from inconvenience is very forcible in law.)
It is true that this is not the only remedy. The plaintiff may have a rule upon the sheriff to bring the money into court, or show cause to the contrary; which rule if made absolute may be enforced by attachment. But in this mode, the secureties can not be reached; nor the interest recovered which is given by tho statute, at the rate of fifteen per centum per annum, which is recoverable, upon the motion. But there is another consideration which is entitled to weight against turning the plaintiff to this remedy by attachment. It is unpractised and long disused. The remedy by motion is easy, fa *553 miliar, long used and understood It is inconvenient to break up such long and settled habits.
Sureties of the sheriff cannot be reached by the motion at common law, nor can damages be recovered.
Motion lies under the act of ’96, to recover of the sheriff who has collected Bank notes on an execution according to the endorsement, the value of the paper with the 15 per cent.
Another remedy is by suit on the sheriff’s bond of office, against him and sureties. But in this, the fifteen per centum interest, can not be recovered. Besides it is not so summary and simple; and it is inconvenient to turn a plaintiff, who has got to the end of one. suit, to the necessity of another dilatory proceeding to recover his money collected by the officer of the law.
The remedy by attachment, or by suit on the bond of office, is not so efficacious, nor so plain, familiar and speedy.
Under the weight of the considerations which press themselves into view, in favour of sustaining the remedy by motion, we would not feel justified in denying this remedy, unless we were clearly convinced it was against law. That the question is not free from difficulty we acknowledge. The court has perceived and felt the difficulty But upon mature consideration and consultation, a majority of the court (Judge Mills not concurring) are of opinion that the remedy by motion is within the provisions of the statute. The return of the sheriff in substance and effect and the proof is, “that he hath levied the debt and costs as in such writ is required:” he bath failed to pay the “same,” as required by law. The statute, has given the remedy by motion “for the money or tobacco mentioned in the writ.” The execution was, on its face, for lawful money of the linked States; but by the endorsement it was for a species of current money of Kentucky; for bank notes; the money which the sheriff has collected according to the command and effect of the writ, in bank notes, is a species of money, current by the laws of Kentucky, in certain cases.
But in rendering judgment for the full amount of the execution, without reducing the value of the notes to their value in coin, according to the scale of depreciation, when they ought to have been paid over by the sheriff to the plaintiff, the court erred, and for this the judgment must be reversed.
Act of 1824, authorizing the recovery in bank notes does not apply.
Judgment and mandate.
Crittenden, for plaintiffs; Denny, for defendant.
The act of 1824, 5th Jan. Sess: acts, 397; which, authorizes judgments to be entered, to he discharged in bank notes, if the plaintiff will make a written statement on his declaration or warrant, that ho is willing to take hank notes, does not apply to this case. That, act applies to cases of direct contract, for the payment of the current paper of the state. This case is for an omission of duty by the sheriff, connected with an increment of fifteen per centum interest. The sureties are bound in a bond for the sheriff’s performance of his duties; but they have not contracted to pay bank notes; their legal liability arising out of the sheriff’s omission of duty, is to pay lawful money, not current bank notes.
It is therefore considered by the court, that the judgment be reversed, that the cause be remanded, with directions to the circuit court to enter judgment for the value of the bank note, when reduced to lawful coin of the United States, looking to the depreciation of the notes at the return day of the execution, together with the interest thereon, at the rate, of fifteen per centum per annum, as authorized by law, with costs of the motion.
Plaintiffs to recover their costs in this court.